In the Matter of the Appraisal under the Transfer Tax Act
of the Estate of WILLIAM H. HOOPLE, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant;
WILLIAM G. HOOPLE, as Executor, Respondent.

1. TRANSFER TAX — RIGHT TO A REFUND OF ILLEGAL TAX A PRIVI-
LEGE, NOT A VESTED RIGHT — TAX LAW, § 225. The right to a refund of
the amount of a transfer tax illegally assessed upon property exempt from
taxation is not a vested right but a privilege, the extent and duration of
which depends entirely upon the language of the statute conferring it;
the time within which it may be prosecuted may be restricted, or, if not
violative of the Constitution, may be enlarged; if, however, the claim
as between citizens would be barred by lapse of time, under section 6 of
article 7 of the Constitution, neither the state nor any of its representa-
tives can audit, allow or pay it.

2. SAME. An application made in October, 1903, to vacate that part of
an order entered November 29, 1895, assessing an illegal transfer tax which
was paid on that day, and for an order directing the state comptroller to
refund the amount of the tax, should be denied upon the ground that
under section 225 of the Tax Law (L. 1896, ch. 908, as amd. L. 1900, ch.
382) the application was not made within two years after the statute took
effect as provided therein. The rule that statutes of limitation are pro-
spective in their effect, unless a contrary legislative intent is declared in
express terms or by necessary implication, has no application since it is
not a mere statute of limitation; but if applicable, the claim for a refund is
one that as between citizens would be barred by lapse of time, and the
comptroller under the Constitution is prohibited from paying it even if
the two-year limitation did not apply.

*Matter of Hoople*, 93 App. Div. 486, reversed.

(Argued October 6, 1904; decided October 28, 1904.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
April 22, 1904, which affirmed an order of the Queens County
Surrogate's Court vacating a former order in so far as it
assessed a transfer tax upon a part of decedent's estate repre-
sented by United States bonds, and directing the state comp-
troller to refund such tax which had been previously paid.

William G. Hoople died June 17th, 1895. In the proceed-
ings taken for the settlement of his estate the surrogate of

Queens county rendered a decree, dated November 29th, 1895, assessing a transfer tax upon the estate under the provisions of chapter 399 of the Laws of 1892. A portion of the estate consisted of United States bonds, which were included in the property upon which the tax was based. The tax thus assessed was voluntarily paid by the executor on the 29th day of November, 1895.

In October, 1896, and again in May, 1897, this court decided that United States bonds could not be subjected to a transfer tax under the act referred to. (*Matter of Whiting*, 150 N. Y. 27; *Matter of Sherman*, 153 id. 1.)

In October, 1903, the executor herein petitioned the surrogate of Queens county to vacate that part of his former decree which related to the tax assessed upon the transfer of United States bonds. The petition was granted and the surrogate ordered the state comptroller to refund to the estate that portion of the tax which amounted to $660.00. Upon the comptroller's appeal to the Appellate Division that order was affirmed and the comptroller now appeals to this court.

*Jabish Holmes, Jr., Leonard B. Smith* and *Frank Julian Price* for appellant. The privilege of suing the state is a matter of favor and can be taken away at any time. (*Lewis* v. *State*, 96 N. Y. 71; *People* v. *Dennison*, 84 N. Y. 272; *Rexford* v. *State*, 105 N. Y. 229; 26 Am. & Eng. Ency. of Law [2d ed.], 487; *Parmenter* v. *State*, 135 N. Y. 150; *Beers* v. *Arkansas*, 20 How. [U. S.] 527; *Matter of Ayres*, 123 U. S. 443; *Antonio* v. *Greenhow*, 107 U. S. 767; *M. R. R. Co.* v. *Tennessee*, 101 U. S. 337; *Balzer* v. *State of N. Carolina*, 161 U. S. 240; 104 N. C. 265; 84 N. C. 362; *Ex parte State*, 52 Ala. 231; *State* v. *Hill*, 54 Ala. 67.) Section 225 of the Tax Law, as amended by chapter 173 of the Laws of 1901, amending chapter 382 of the Laws of 1900, by which the state submitted itself to the jurisdiction of the surrogate to order a refund and impose the duty on the comptroller of making a refund in cases where the order was modified or reversed within two years from the entry of the order fixing the tax and the refund is applied for within one year thereafter, applies to this

case. (*Ins. Co.* v. *Ritchie*, 5 Wall. 541; *Bd. of Assessors* v. *Osborne*, 9 Wall. 567; *R. R. Co.* v. *Grany*, 98 U. S. 401; *Ex parte McCockle*, 7 Wall. 514; *Matter of Hall*, 167 U. S. 38; *Hughson* v. *City of Rochester*, 49 Hun, 51; *Town of Worth* v. *Bd. of Suprs.*, 90 Hun, 210; *Beck* v. *City of New York*, 31 Misc. Rep. 58; *People* v. *Livingston*, 6 Wend. 526; *Curtis* v. *Leavitt*, 15 N. Y. 152.) If the act of 1900 does not apply to this case and does not cut off the unlimited time allowed by the act of 1897 to vacate the tax order and order the refund, then the refund is prohibited by section 6 of article 7 of the Constitution. (*O'Hara* v. *State*, 112 N. Y. 153; *Cox* v. *State*, 144 N. Y. 409; *Smith* v. *Reeves*, 178 U. S. 440; *People ex rel.* v. *Morgan*, 45 App. Div. 19; *Gates* v. *State*, 128 N. Y. 221; *McDougall* v. *State*, 109 N. Y. 73; *Suydam* v. *Morgan*, 45 App. Div. 19; *Smith* v. *Partridge*, 172 N. Y. 95; *Jex* v. *Mayor, etc.*, 111 N. Y. 339; *E. El. Ill. Co.* v. *City of Brooklyn*, 22 App. Div. 371.) The petitioner's statutory right to recover the tax is also barred by the general Statute of Limitations at the expiration of six years, irrespective of the constitutional provision. (*Jex* v. *Mayor, etc.*, 111 N. Y. 339; *E. El. Ill. Co.* v. *City of Brooklyn*, 22 App. Div. 371; *Diefenthaler* v. *Mayor, etc.*, 111 N. Y. 331; *Trimmer* v. *City of Rochester*, 134 N. Y. 76.) The right to a refund is barred because not made within five years, as required by the law of 1892, in force at the time the payment was made. (Wood on Limitations, § 9; *P., etc., Ry. Co.* v. *Hine*, 25 Ohio St. 629.)

*Joseph Rowan* and *Martin B. Cohn* for respondent. The Surrogate's Court of Queens county, upon application of this petitioner, on due notice to the state comptroller, properly modified on October 29, 1903, its order of August 9, 1895, by vacating so much thereof as fixed and decreed payment of a transfer tax upon the bequest of the United States bonds in question, under the Hoople will. (*Vreedenburgh* v. *Calf*, 9 Paige, 128; *Sipperly* v. *Baucus*, 24 N. Y. 46; *Seaman* v. *Whitehead*, 78 N. Y. 306; *Matter of Underhill*, 1 Connolly, 313; *Matter of Flynn*, 136 N. Y. 287; *Matter of Mather*, 41 Misc. Rep. 414; *Vanderbilt* v. *Schreyer*, 81

N. Y. 646; *Ladd* v. *Stevenson*, 112 N. Y. 325; *Matter of Sherar*, 25 Misc. Rep. 138; *Matter of Scrimgeour*, 80 App. Div. 388.) In delaying the application for modification of the order and a refund of the taxes illegally exacted, this petitioner was not prejudiced by lapse of time, nor by his failure to appeal from the objectionable portion of this order. (*Kamp* v. *Kamp*, 59 N. Y. 212; *Seaman* v. *Whitehead*, 78 N. Y. 306; *Matter of Underhill*, 117 N. Y. 471; *Ferguson* v. *Crawford*, 70 N. Y. 253; *Starbuck* v. *Murray*, 5 Wend. 148; *Latham* v. *Edgerton*, 9 Cow. 227; *Mills* v. *Martin*, 19 Johns. 7; *Cox* v. *Stokes*, 156 N. Y. 491.) The provision of section 225 of the Transfer Tax Law, as amended by chapter 382 of the Laws of 1900, requiring the comptroller to refund if " the order was modified or reversed within two years from and after the date of the order fixing the tax," cannot be deemed retroactive so as to be applicable to an order entered prior to the passage of the act of 1900. (*Matter of Coogan*, 27 Misc. Rep. 563; *People ex rel.* v. *Morgan*, 45 App. Div. 628; *People* v. *O'Brien*, 111 N. Y. 1; *White* v. *United States*, 191 U. S. 345, 352; *Matter of Miller*, 110 N. Y. 216; *People ex rel.* v. *Spicer*, 99 N. Y. 225; *N. Y. & O. M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473; *United States* v. *Heth*, 3 Cranch, 399; *Chew Heong* v. *United States*, 112 U. S. 559; *Matter of Tuller*, 79 Ill. 99.) Neither the five-year limitation of the Transfer Tax Law of 1892, nor the six-year Statute of Limitations contained in the Code of Civil Procedure, are applicable to bar the executor's right to a refund. (*Matter of Wolfe*, 137 N. Y. 205.)

WERNER, J. It is a fundamental principle of our jurisprudence that no action will lie against a sovereign state, or any of its officers, to enforce an obligation of the state without express legislative permission (*People* v. *Dennison*, 84 N. Y. 272; *Lewis* v. *State of N. Y.*, 96 id. 71; *Locke* v. *State of N. Y.*, 140 id. 480; *Smith* v. *Reeves*, 178 U. S. 436; *Flagg* v. *Bradford*, 181 Mass. 315); and when a state does abdicate this attribute of sovereignty and permits itself to be sued, the citizen who benefits by such an act of grace acquires no vested

right thereby, but simply a privilege voluntarily granted by the state, which may be hedged about with terms and conditions, and may be withdrawn as freely as it was given. (*Beers* v. *Arkansas*, 20 How. [U. S.] 527; *Parmenter* v. *State of N. Y.*, 135 N. Y. 154; *Baltzer* v. *North Carolina*, 161 U. S. 240; *Railroad Co.* v. *Tennessee*, 101 id. 337; *Railroad* v. *Alabama*, Id. 832.)

In the light of these principles it is obvious that the statutes under discussion (Ch. 399, L. 1892; ch. 284, L. 1897; ch. 382, L. 1900) invested the respondent with no absolute right, but conferred upon him a mere privilege, the extent and duration of which depended entirely upon the language conferring it.

When this tax was paid, chapter 399 of the Laws of 1892 was in force. By section 6 of that act it was provided that when a transfer tax had been erroneously paid into the state treasury, the comptroller was authorized upon satisfactory proof to require the amount of any erroneous or illegal transfer tax to be refunded to the persons who had paid the same, provided, however, that all applications for such refunding should be made within five years after the payment of the tax. Upon the codification of the Tax Law (Ch. 908, L. 1896) this provision, without change, became section 225 of the statute. In 1897, by chapter 284 of the laws of that year, this section was so amended as to confer upon the surrogate having jurisdiction of the proceedings, power to modify or reverse an order fixing a transfer tax, by directing a refund of the amount of any moneys paid in excess of the tax as fixed by the order of modification or reversal, but this new privilege was coupled with the condition that no application for such refund should be made after one year from such reversal or modification. It is to be noted that while the provision just referred to did not limit the time within which an order fixing a transfer tax could be modified or reversed, no application for a refund of the tax could be made after the lapse of a year from the time of such modification or reversal. Thus the law stood until April 11th, 1900, when chapter 382 of the statutes of that year inaugurated another

change to the effect that, if within two years from the date of the entry of an order fixing a transfer tax such order should be modified or reversed by the surrogate having jurisdiction of the proceedings, any moneys paid on account of such tax in excess of the amount fixed by the order as modified or reversed, should be refunded to the persons who paid the same, but that no application for such refund should be made after one year from such reversal or modification.

The tax herein was paid in November, 1895. The law then in force (Ch. 399, L. 1892) gave the respondent five years in which to apply for a refund of any part of the transfer tax erroneously paid. This period had not expired when the amendment (Ch. 284, L. 1897) went into effect, apparently providing for an unlimited period in which to apply for a modification or reversal of the original order, but requiring the application for the refund to be made within one year after such modification or reversal. Then came the present statute which, as we have seen, limits the periods within which both the application for modification or reversal and for a refund must be made.

In October, 1903, the respondent applied to the surrogate of Queens county for an order modifying the original order which fixed the transfer tax herein. Nearly eight years had then elapsed since the entry of the order fixing the tax, and the comptroller insisted that the surrogate was without jurisdiction. This objection was overruled and the order of modification was granted. In affirming the decision of the surrogate the learned Appellate Division applied the rule that statutes of limitation are purely prospective in their effect, unless a contrary legislative intent is declared in express terms or by necessary implication. We think the rule invoked has no application to the statutes under consideration, for they are not mere statutes of limitation; but, even if it had, it would not help the respondent.

By section 6 of article 7 of the State Constitution it is provided that " neither the legislature, the canal board, nor any person or persons acting in behalf of the State, shall audit,

allow, or pay any claim which, as between citizens of the state, would be barred by lapse of time." An action for the recovery of money paid by reason of an illegal or erroneous tax is regarded as an action for money had and received to which the six years' Statute of Limitations applies. (*Brundage* v. *Village of Port Chester*, 102 N. Y. 494; *Trimmer* v. *City of Rochester*, 134 id. 76.) As the claim here presented was one which, as between citizens of the state, would have been barred by lapse of time, it seems clear that the comptroller could not have audited, allowed or paid it, even if the two years' limitation in the statute of 1900 did not apply. (*Gates* v. *State of N. Y.*, 128 N. Y. 221.)

It is to be observed, moreover, that if the statute of 1900 with its two years' limitation is to be treated as purely prospective, the same test must be applied to the act of 1897, in which event the respondent is relegated to the statute of 1892 with its five years' limitation, which had elapsed by more than three years before he sought relief.

The case of *Parmenter* v. *State* (*supra*), relied upon by the respondent, does not conflict with these views. In that case the claim was presented after the state board of audit had been abolished and the state board of claims had been created. There was no limitation of time within which a claim could be presented to the board of audit, but the act creating the board of claims limited its jurisdiction to claims which had accrued within two years before they were filed. As Parmenter's claim might have been filed at any time with the board of audit, but had accrued more than two years prior to the creation of the board of claims, it was held that the change operated to deprive him of a tribunal in which his claim could be presented, and, therefore, the constitutional provision above referred to had no application.

Without further discussion of the subject we conclude that the order appealed from should be reversed and the application denied, with costs.

CULLEN, Ch. J., GRAY, O'BRIEN, MARTIN and VANN, JJ., concur; HAIGHT, J., absent.

Order reversed, etc.